IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAMON LASHAWN MILLIGAN, | ) | |
| | ) | Civil Action No. 15 – 1195 |
| Plaintiff, | ) | |
| | ) | Chief District Judge Joy Flowers Conti |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| ALLEGHENY COUNTY JAIL, *et al.*, | ) | |
| | ) | ECF No. 31 |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

I. **RECOMMENDATION**

For the reasons stated herein, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 31) be granted but that Plaintiff be allowed to amend his Complaint. However, it is recommended that Defendants Allegheny County Jail and the Allegheny County Bureau of Corrections be dismissed with prejudice.

II. **REPORT**

Presently before the Court is a Motion to Dismiss (ECF No. 31) filed by the remaining Defendants in this case: the Allegheny County Jail; Warden Orlando Harper; the Allegheny County Jail Oversight Board; and the Allegheny County Bureau of Correction.

A. **Factual and Procedural History**

Plaintiff's Complaint, filed on September 16, 2015, (ECF No. 3), alleges the following: On July 29, 2015, Plaintiff was arrested and committed into the Allegheny County Jail. Id. at ¶ 5. During the intake process, Plaintiff advised that he had a medical need for a "high protein/enhanced diet." Id. at ¶ 6. However, he was not given this diet during his confinement and as a result he "lost a drastic amount of weight." Id. at ¶ 7. On August 11, 2015, Plaintiff

1

was taken before a district magistrate in Pittsburgh Municipal Court. Id. at ¶ 8. At that time, the magistrate dismissed one criminal complaint against Plaintiff and sent the other to County Court for formal arraignment. Id. Also at that time, Plaintiff's bond was modified to a "nonmonetary bond." Id. Believing that he should have been released on August 11, 2015, Plaintiff started to inquire as to why he had not yet been released from the Allegheny County Jail. Id. at ¶ 9. Plaintiff thereafter submitted several requests and grievances to jail officials, including the Inmate Records Department, Captain Leon, the Deputy Warden and the Unit Manager of level 2, but he did not receive any responses thereto. Id. at ¶¶ 10-12. On August 16, 2015, Plaintiff spoke with a jail sergeant who then investigated Plaintiff's status and advised Plaintiff that "the issue was resolved." Id. at ¶ 13. Plaintiff was released from the Allegheny County Jail on August 18, 2015, which he states is one week after he should have been released. Id. at 14. Because of the alleged delay in Plaintiff's release, he lost his position with AmeriCorps. Id. at ¶ 15. Based on the foregoing, Plaintiff demands specific unliquidated damages of five million dollars. Id. at ¶ 16.

### B. Standard of Review

The United States Court of Appeals for the Third Circuit has thusly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal

evidence of the necessary element." *Fowler, 578 F.3d at 213* (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

When adjudicating a motion to dismiss under Rule 12(b)(6), courts may consider - in addition to the complaint -matters of public record and other matters of which a court may properly take judicial notice, such as court orders and exhibits attached to the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *Golden v. Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, the Court must liberally construe the factual allegations of Plaintiff's Complaint because pleadings filed by pro se plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). If the Court "can reasonably read [the] pleadings to state a valid claim on which [Plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [Plaintiff's] unfamiliarity with pleading requirements." *Wilberger v.*

*Ziegler,* No. 08-54, 2009 WL 734728 at *3 (W.D. Pa. March 19, 2009) (citing *Boag v. MacDougall,* 454 U.S. 364 (1982) (*per curiam*)).

### C. Discussion

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision in Federal Court, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir. 1996).

#### 1. Warden Orlando Harper

Defendants' first argue that Warden Orlando Harper should be dismissed from this case due to lack of personal involvement. To establish personal liability against a defendant in a section 1983 action, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981)).

In the context of a defendant who is alleged to have performed in a supervisory role, courts have identified two general instances in which either the conduct of that supervisor-defendant or the policies/procedures of that supervisor-defendant may amount to personal involvement and thereby warrant a finding of individual, supervisory liability for a constitutional tort: First, supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Second, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). In this second instance, a plaintiff must prove the following four elements to establish supervisory liability: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-supervisor was aware that the policy created an unreasonable risk; (3) the defendant-supervisor was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989);[1] Brown v. Muhlenberg Twp., 269 .3d 205 (3d Cir. 2001).

Plaintiff's Complaint, liberally construed, does not allege any specific facts showing personal involvement by Warden Orlando Harper. There are no factual allegations that Warden Harper personally participated with others in violating Plaintiff's rights, directed others to violate

---

[1] In this Circuit, when a plaintiff seeks to hold a defendant liable under the Eighth Amendment in his or her role as a supervisor, "*Sample*'s four-part test provides the analytical structure . . . ., it being simply the deliberate indifference test applied to the specific situation of a policymaker." Beers-Capitol v. Whetzel, 256 F.3d 120, 135 (3d Cir. 2001).

5

them, or had knowledge of an acquiesced in any subordinate's unconstitutional conduct vis-à-vis Plaintiff. Furthermore, the Complaint does not set forth a factual basis from which to conclude that Warden Harper personally established and maintained any policy or procedure which, in turn, directly caused constitutional harm to Plaintiff. There are no factual allegations demonstrating that Warden Harper was aware of any policy or procedure creating any unreasonable risk, that he was subjectively indifferent to any risk, or that some policy failure caused his harm. In fact, there are absolutely no facts alleged against Warden Harper in the Complaint at all. Therefore, the Complaint should be dismissed as against Warden Harper. However, as discussed *infra*, Plaintiff should be granted leave to amend his Complaint in order to show personal involvement by the persons allegedly responsible for the underlying violation.

### 2. Allegheny County Jail and Allegheny County Bureau of Corrections

Defendants move to dismiss the Allegheny County Jail and the Allegheny County Bureau of Corrections. This request should be granted and these defendants should be dismissed with prejudice because the Allegheny County Jail and the Allegheny County Bureau of Corrections (which the undersigned assumes is also the jail) are not "persons" capable of being sued under 42 U.S.C. § 1983. *See*, *e.g.*, Howie v. Allegheny Cnty., 2009 WL 1309749, at *2 (W.D. Pa. 2009) ("Here, the claims asserted against the [jail] are subject to dismissal because jail facilities are not 'persons' for the purpose of § 1983 liability."); *see also* Regan v. Upper Darby Tp., 2009 WL 650384, at *4-6 (E.D. Pa. Mar. 11, 2009) (collecting cases).

### 3. Allegheny County Jail Oversight Board

Defendants also move to dismiss the Allegheny County Jail Oversight Board arguing that it is a County agency that is not capable of being sued under § 1983 apart from the County. The Third Circuit, however, has stated that the County Jail Oversight Board "is a creature of statute

and, therefore, a political subdivision of the government."[2] Veatch v. Allegheny County Bureau of Corrections, 282 F. App'x 159, 160 (3d Cir. 2008). A political subdivision, such as a municipality or a county, is subject to suit as a "person" in a § 1983 action. Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 695 (1978) (holding that municipalities and other local governmental units are "persons" subject to § 1983 liability). However, such actions cannot successfully be premised on theories of respondeat superior alone, but rather depend upon the existence of an established rule, regulation, policy or custom of the political subdivision. Id.; Rizzo v. Goode, 423 U.S. 362 (1976). In Monell, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. Id.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. Id. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986), *quoted in,* Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. Andrews, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could

---

[2] 61 Pa. C.S.A. § 1723 establishes the County Jail Oversight Board and § 1724(a) states that, "The board's administrative powers and duties shall include the operation and maintenance of the prison and all alternative housing facilities, the oversight of the health and safekeeping of inmates and the confirmation of the chief executive's selection of a warden."

7

occur and that the decision-maker acted with deliberate indifference to this risk. Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Finally, the plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. Bielevicz, 915 F.2d at 850-51. "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." Id. at 851 (citing Black v. Stephens, 662 F.2d 181, 190-91 (3d Cir. 1981)).

Plaintiff does not identify any policy or custom attributable to the Allegheny County Jail Oversight Board that was responsible for his over detention. That is Plaintiff has not articulated facts demonstrating that his over detention occurred as part of a course of conduct so permanently and well-settled as virtually to constitute law. Consequently, Plaintiff necessarily fails to show a causal link between a defective policy or custom and a constitutional deprivation. In fact, the Court notes that Plaintiff has failed to allege any facts against the Allegheny County Jail Oversight Board whatsoever. Therefore, the Allegheny County Jail Oversight Board should be dismissed. However, its dismissal should be without prejudice as it is not obvious that amendment with regard to its involvement would necessarily be futile.

### 4. Over-detention

Defendants also argue that Plaintiff's Complaint should be dismissed because he has not stated a claim for an underlying constitutional violation. In his Complaint, Plaintiff alleges that he had a right to be released on August 11, 2015 after his bond was modified to "nonmonetary." However, he states that he was not released until August 18, 2015.

Defendants argue that Plaintiff is using and/or misapprehending a legal term of art. Specifically, they state that instead of "nonmonetary bond" it is most likely that Plaintiff was really subjected to "nonmonetary conditions," which does not necessarily exclude the requirement that bail money may also have to be posted in order to secure release. They argue that Plaintiff's allegation that his bond was changed to "nonmonetary" does not support the inference that he should have been automatically released on August 11th. The Court will not assume that this was the case especially since public records indicate that Plaintiff's bail type was changed to "nonmonetary" on August 11, 2015 and also show that Plaintiff's release from jail was actually recorded on August 11, 2015, and not August 18, 2015. *See* Commonwealth v. Milligan, MJ-05003-CR-0006521-2015.

In any event, Defendants argue that even if Plaintiff's release was delayed one week, this does not constitute a violation of his constitutional rights. Again, this is not necessarily the case. The constitutional right to be free from continued detention after it is known that the detainee is entitled to release is clearly established. There is a substantial body of law recognizing that over detention violates the United States Constitution, whether it is an inmate who has completed his sentence,[3] or a detainee who is entitled to be released from jail.[4]

---

[3] *See*, *e.g.*, Davis v. Hall, 375 F.3d 703, 714 (8th Cir.2004) (plaintiff alleged that defendants "deprived him of a protected liberty interest by continuing to confine him after he completed his sentence and was ordered immediately released"); Moore v. Tartler, 986 F.2d 682, 686 (3d Cir.1993) ("Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and unusual punishment."); Golson v. Dep't of Corrections, Nos. 90–7344, 90–7345, 1990 WL 141470, at *1 (4th Cir.1990) ("Incarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment."); Lewis v. O'Grady, 853 F.2d 1366, 1370 (7th Cir.1988); Douthit v. Jones, 619 F.2d 527, 532 (5th Cir.1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."); Arline v. City of Jacksonville, 359 F.Supp.2d 1300, 1309-10 (M.D. Fla. Feb. 25, 2005) (jury question as to whether or not plaintiff's two and half hour detention following his acquittal on all criminal charges violated the Fourth Amendment)

While brief delays associated with the administrative release of a detainee have been found to be reasonable, the Third Circuit Court of Appeals has stated in regards to an inmate plaintiff that § 1983 liability may be established for over detention if three elements are met: (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention. *See* Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989). *See also* Moore, 986 F.2d at 686-87 (holding that a mistaken six-month delay in a prisoner's release did not violate the Eighth Amendment because, although the defendants' efforts were "slow and incompetent," they undisputedly "attempt[ed] to resolve the confusion" and took "affirmative steps . . . toward that end.").

The reasons for Plaintiff's delayed release are not apparent from the face of the Complaint. However, Plaintiff does allege that he began to inform and complain to officials about his over detention after forty-eight hours from the modification of his bond and that he never received any response to his inquiries or grievances. Applying the Sample factors to this information, the Court finds that Plaintiff's over detention could rise to the level of a constitutional violation.

---

[4] *See*, *e.g.*, Berry v. Baca, 379 F.3d 764, 773 (9th Cir.2004); Brass v. County of Los Angeles, 328 F.3d 1192, 1200 (9th Cir. 2003) (over detention after court-ordered release has to potential to violate constitutional rights); Sivard v. Pulaski County, 959 F.2d 662 (7th Cir.1992) (continued detention where sheriff knew it was wrongful states claim under § 1983 for due process violation); Sanders v. English, 950 F.2d 1152 (5th Cir.1992) (failure to release after officer knew or should have known that plaintiff had been misidentified gives rise to cause of action under § 1983); Parilla v. Eslinger, 2005 WL 3288760, at *7 (M.D. Fla. Dec. 5, 2005) (denying qualified immunity for claim that defendants simply refused to release detainees despite a court order to do so).

Plaintiff, however, has failed to identify a party who had personal involvement in the alleged constitutional violation. As stated *supra*, Plaintiff has not sufficiently alleged that Warden Harper was personally involved in the alleged violation, nor has he alleged that his over detention was the result of a custom or policy attributable to the Allegheny County Jail Oversight Board or Allegheny County (although the undersigned notes that Plaintiff did not name the County as a defendant in this matter). While Plaintiff does allege that he informed the Unit Manager of level 2, Captain Leon, the Deputy Warden and the Records Department of his over detention, he does not name any of these individuals as defendants in this case. Thus, while Plaintiff may be able to assert a constitutional violation, he has failed to do so against any named defendant. However, Plaintiff should be given a chance to amend his complaint as amendment may not necessarily be futile.

### 5. **Qualified Immunity**

Defendants argue that Warden Orlando Harper is entitled to qualified immunity. However, since it has already been determined that Plaintiff has not sufficiently pled the Warden's personal involvement the undersigned will not address the request for qualified immunity at this time. Defendants are free to raise the qualified immunity defense again after Plaintiff has filed an amended complaint.

### 6. **Meals/Weight Loss**

Finally, Defendants move to dismiss any claim Plaintiff may have asserted with respect to his weight loss from being denied special meals. Under the Eighth Amendment, prisoners are entitled to a nutritionally adequate diet.[5] *See* Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981). The Eighth Amendment requires that prison officials

---

[5] Because pretrial detainees are afforded at least the same constitutional protections as prisoners, the Fourteenth Amendment also guarantees pretrial detainees a nutritionally adequate diet.

11

serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Id. Merely because the food served is not prepared to an inmate's taste does not implicate the Eighth Amendment. *See* Burgin v. Nix, 899 F.2d 733, 734-35 (8th Cir. 1990) (inmates do not have a constitutional right to be served any particular type of food). Rather, the Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health. *See* Mays v. Springborn, 575 F.3d 643, 648 (7th Cir. 2009); Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006); Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002); Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999); Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996); Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992); Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985); Campbell v. Cauthron, 623 F.2d 503, 508 (8th Cir. 1980).

There are no factual allegations in the Complaint that Plaintiff was denied a nutritionally adequate diet, only that he was not provided with his special "high protein/enhanced diet." The only indirect evidence that Plaintiff has alleged relates to his weight loss while in jail. However, Plaintiff has not alleged that his weight loss was the result of an insufficiently nutritious diet and without some indication of how much weight Plaintiff lost, weight loss alone does not show that Plaintiff had a need for a special diet.

It is also unclear whether Plaintiff's weight loss stemmed from simply a change in his normal diet or whether Plaintiff has some physical malady that required the need for a special diet. The Complaint does not claim that such a physical condition which, without a "high protein/enhanced diet", could be expected to lead to substantial and unnecessary suffering, injury

12

or death. Likewise, the Complaint does not allege that Plaintiff's condition was diagnosed by a physician as mandating a special diet.

As it stands, this claim is subject to dismissal for failure to state a claim. However, it is not clear that amendment would be futile and therefore Plaintiff should be given an opportunity to file an amended complaint to cure the deficiencies.

### 7. Amendment of the Complaint

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). It does not appear that allowing for amendment of the Complaint would necessarily be futile with respect to Plaintiff's claims. Therefore, he should be allowed to amend his Complaint.

### III. CONCLUSION

For the aforementioned reasons, it is respectfully recommended that Defendants' Motion to Dismiss be granted but that Plaintiff be allowed to amend his Complaint. However, it is recommended that Defendants Allegheny County Jail and the Allegheny County Bureau of Corrections be dismissed with prejudice.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, Plaintiff shall have fourteen (14) days from the date of the service of this report and recommendation to file written

objections thereto. Plaintiff's failure to file timely objections will constitute a waiver of his appellate rights.

Dated: June 21, 2016.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Ramon Lashawn Milligan
89 Knox Avenue Apartment 11
Pittsburgh, PA 15210

Counsel for Defendants
*Via CM/ECF Electronic Mail*